# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPTAIN GLENN SULMASY, USCG (RET.)<br>　　　10 Seaside Lane<br>　　　Old Lyme, CT 06371<br><br>　　　Plaintiff,<br><br>v.<br><br>THE HONORABLE KRISTI NOEM<br>　　　Secretary of Homeland Security<br>　　　2707 Martin Luther King Jr., Ave SE<br>　　　Washington D.C. 20593-7000<br><br>　　　Defendant. | CIVIL ACTION NO. |

## COMPLAINT

It is apparent that one or several members of the United States Coast Guard ("Coast Guard") harbored personal animosity towards, and bore a grudge against, Captain (CAPT) Glenn Sulmasy, Coast Guard (Retired). This grudge has resulted in a severe Privacy Act violation against Plaintiff CAPT Sulmasy.

First, in July 2023, a 2014 Coast Guard Investigative Services ("CGIS") report of investigation into an alleged coverup of a sexual assault at the United States Coast Guard Academy ("Academy") that had occurred seventeen years prior—in 1997—was released to CNN. Details of the alleged coverup is that the assault was supposedly reported to CAPT Sulmasy, who—as a junior judge advocate serving at the Academy—failed to move forward on investigating the assault. CNN further reported that the 2014 investigation was explosive, and kickstarted a four-year, overarching investigation that would be called "Operation Fouled Anchor" into allegedly concealed incidents of sexual assault at the Academy from 1988-2006.

Most unfortunately, CAPT Sulmasy was not even stationed at the Academy in February and March 1997, when the alleged incident and reporting were stated to have occurred; instead, he was still a law student at the University of Baltimore School of Law in Baltimore, Maryland.

Nonetheless, once Coast Guard members provided CNN a copy of this investigation, the media sought to obtain more information on CAPT Sulmasy from the Coast Guard. In September 2023, CNN received a copy of a prosecutorial memorandum drafted by Coast Guard attorneys regarding alleged misconduct committed by Sulmasy. The memorandum was exempted from disclosure under both the Freedom of Information Act ("FOIA") and the Privacy Act; and yet, CNN's article showed full, unredacted excerpts of the document, reflecting it had obtained the document directly from an individual in the Coast Guard with access to the memorandum, as opposed through normal FOIA channels.

CNN then proceeded to print an incredibly damaging piece on CAPT Sulmasy. As a result, Sulmasy, who by that time had been retired from the Coast Guard for over eight years, was forced to resign from his position as a college President. Within days of the publication of this targeted piece on CAPT Sulmasy, his entire livelihood was destroyed, and since the publication of this article, CAPT Sulmasy has been unemployable. Multiple media articles followed the CNN piece, and his name was later brought up in Congressional hearings on the Fouled Anchor investigation, causing CAPT Sulmasy to unfairly and incorrectly become the face of Operation Fouled Anchor. Thus, CAPT Sulmasy brings this suit against the entity that violated his Privacy Act rights and caused him significant pecuniary harm.

**PARTIES**

1. Plaintiff Glenn Sulmasy ("Plaintiff") is a retired Coast Guard officer, former law professor and Humanities Department Chairman at the Academy, former president of Nichols College, and an academic in the fields of national security and international law.

2. Defendant the Honorable Kristi Noem ("Defendant") is the Secretary of Homeland Security and is named in her official capacity as the head of the Department of Homeland Security, the agency overseeing the Coast Guard and in possession, custody, and control of the records that are the source of the Privacy Act Violation.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a case arising under the laws of the United States and is brought under the Privacy Act, 5 U.S.C. § 552a(g). The relief requested herein is authorized under 5 US.C. § 552a.

4. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is the judicial district in which Defendant is located.

5. This action is brought within 2 years of the cause of action accruing: Plaintiff's discovery on September 21, 2023, of the wrongful disclosure of the prosecutorial memorandum in violation of the Privacy Act.

**FACTS**

6. In September 2014, CGIS initiated an investigation into an allegation of sexual assault of a female Academy cadet in 1997. Attached to the sexual assault allegation was a follow on allegation that Plaintiff was a judge advocate serving at the Academy at the time of the assault and its immediate aftermath, and that Plaintiff, after receiving a written statement from the alleged victim in 1997 detailing the assault, did not move forward with it.

7. Plaintiff was not serving at the Academy during the concerned time. In the spring of 1997, Plaintiff was in Baltimore, attending law school.

8. Nonetheless, this 1997 allegation sparked a much larger investigation into historical allegations of sexual assault at the Academy that occurred between 1988-2006. This overall investigation, which was conducted between 2014 and 2018, was labeled "Operation Fouled Anchor."

9. Sometime in June 2023, the Operation Fouled Anchor report of investigation—including the allegation that Plaintiff had attempted to conceal the alleged 1997 incident—was provided to CNN.[1] CNN then reported on Plaintiff's alleged involvement in concealment of the 1997 incident.[2]

10. Once this piece was published, CNN obtained additional information from Coast Guard officials in an effort to solidify an already adverse portrayal of Plaintiff. On September 21, 2023, CNN published yet another article on Plaintiff, this time focusing on alleged misconduct outside the period of time investigated in Operation Fouled Anchor.

11. This article focused solely on misconduct Plaintiff was alleged to have engaged in while he was actually stationed at the Academy as a law professor in 2010. Although already retired from the Coast Guard, Plaintiff, in 2016, was investigated for the alleged misconduct six years prior. During the investigation, a prosecutorial memorandum was drafted by Coast Guard staff

---

[1] Blake Ellis et al, *Criminal investigation into Coast Guard Academy revealed years of sexual assault cover-ups, but findings were kept secret*, CNN: POLITICS (updated June 30, 2023, 10:42 AM), https://www.cnn.com/2023/06/30/politics/coast-guard-academy-secret-sexual-assault-investigation-invs/.

[2] Melanie Hicken et al, *CNN uncovered a damning, secret investigation into sexual assault at the US Coast Guard Academy. This woman's case triggered that probe*, CNN (updated July 12, 2023, 12:07 PM), https://www.cnn.com/2023/07/12/politics/coast-guard-academy-investigation-invs.

judge advocates. Despite noting that all interaction between Plaintiff and a female service member was clearly consensual and that no physical activity occurred between them, the memo still recommended charges be brought to a court-martial so as to avoid any insinuation by the public that the Coast Guard was sweeping anything under the rug.

12. For clarification, this prosecutorial memorandum was drafted during the pendency of CGIS's Operation Fouled Anchor investigation. This recommendation for a court-martial was rejected by both Coast Guard Headquarters and senior leadership at the Academy. Thus, Plaintiff was never court-martialed, and the prosecutorial memorandum remained in a legal file, protected from disclosure.

13. Because of the legal and pre-decisional nature of the memorandum, the bottom of each page of the memorandum contained the following:

> A Coast Guard attorney prepared this document for <u>INTERNAL GOVERNMENT USE ONLY</u>. This document is pre-decisional in nature and qualifies as an inter-agency document containing deliberative process material. This document contains confidential attorney work product relating to a legal matter. The document also contains information that, if disclosed, would invade the personal privacy of an individual. The information in this document was compiled for law enforcement/prosecution purpose. Under exemptions 5, 6, and 7 of section (b) of 5 U.S.C. § 552 (Freedom of Information Act), this material is <u>EXEMPT FROM RELEASE TO THE PUBLIC</u>. (emphasis in original)

14. Notwithstanding this warning label, the CNN article contained actual snippets of the memorandum, including details of the misconduct alleged to have been engaged in by Plaintiff (which was inappropriate in nature).[3] The article was followed up that evening on the Anderson Cooper 360 television program, wherein even more snippets of the prosecutorial memorandum

---

[3] *See* Melanie Hicken et al, *He was investigated for sexting a student at the Coast Guard Academy. He's now a college president*, CNN: US (Sept. 21, 2023, 4:29 PM), https://www.cnn.com/2023/09/21/us/glenn-sulmasy-coast-guard-investigation-invs/index.html.

were shown.[4] This video brought the allegation of alleged inappropriate misconduct by Plaintiff—and his non-prosecution by the Coast Guard—under the overall umbrella of Operation Fouled Anchor, insinuating that the Coast Guard also concealed the alleged misconduct of Plaintiff.

15. At the time this September 21, 2023, article was published, Plaintiff was serving as the President of Nichols College in Dudley, Massachusetts. Based on this article alone, Plaintiff was investigated and then forced to resign just weeks later, leaving behind a yearly salary of $500,000.[5]

16. On or about September 29, 2023, approximately one week after CNN's report, the Coast Guard Office of Privacy Management (CG-6P) discovered that its FOIA/Privacy Act files on an online shared drive had been misconfigured, making what should have been a restricted-access file now open to all Coast Guard members. This resulted in various CGIS reports of investigations being improperly accessed.

17. CGIS then investigated the breach and learned that three Coast Guard members (both service members and civilian employees) had downloaded and retained legal documents on their computers pertaining to Plaintiff. Each individual accessed the legal documents by searching for Plaintiff's name.

18. During the investigation, one of the accessing-individuals (a civilian employee of the Coast Guard) noted that he previously served as a judge advocate in the Coast Guard and personally

---

[4] *Id.*

[5] Curt Devine et al, *College president accused of sexting former student at Coast Guard Academy resigns*, CNN: Politics (Oct. 3, 2023, 7:35 PM), https://www.cnn.com/2023/10/03/politics/coast-guard-sulmasy-resign.

knew Plaintiff. He further noted that he knew Plaintiff had been the subject of a CGIS investigation, and that he (the accessing individual) had been a prosecutor for one of the sexual assaults that was investigated under Operation Fouled Anchor. He said he wanted to inquire into why Plaintiff's case was not prosecuted, and to see if there were any inaccuracies in the CGIS report.

19. A second individual who accessed the legal documents pertaining to Plaintiff said he did so because he, a Coast Guard judge advocate, was scheduled to give a presentation to new judge advocates, and he wanted to ensure he could answer any inevitable questions that come up about plaintiff (ironically teaching new judge advocates while potentially violating the Privacy Act himself).

20. Despite Plaintiff being the identified victim in this major breach of Coast Guard FOIA/Privacy Act files (all of which were unredacted and contained names, information on victims, witnesses, alleged acts, etc.) and subsequent investigation by CGIS, he was never informed of the breach nor was he contacted by CGIS during the investigation. Instead, in February 2024, Plaintiff's sister (whose address was never included in Plaintiff's personnel file while he served in the Coast Guard, and more strangely, whose address was only a temporary residence she was occupying while her new residence was being built), received notice that Plaintiff was the victim of a Privacy Act violation. Plaintiff then filed a separate FOIA lawsuit for any documentation pertaining to the violation and subsequently received the aforementioned CGIS investigation into the Privacy Act violation.

21. The distribution of the prosecutorial memorandum to CNN, and CNN's subsequent publication, have had a direct and profound impact on Plaintiff's career.

22. He was forced to resign from his position at Nichols College, thereby forfeiting his yearly salary of $500,000, as well as a home on campus provided by the College.

23. His reputation has also suffered irreparable damage. Since the article was posted, and other news outlets picked up the piece (as well as the Anderson Cooper production), Plaintiff has either been terminated from jobs he was recently employed at or has been offered jobs with various prestigious law firms, only to have the offer revoked last minute once the future employer learned of the September 21, 2023 CNN article and its excerpts of the prosecutorial memorandum:

   a. In January 2024, he accepted a position as Dining Room Supervisor at the Bretton Arms Inn in New Hampshire (an Omni property) but was terminated by March 1, 2024. ($20/hour).

   b. A prominent New York law firm rescinded an anticipated "Of Counsel" position (expected compensation $100,000–$150,000 annually) after questioning Plaintiff about the CNN/Anderson Cooper report.

   c. Another prominent New York City-based law firm declined to extend an offer (expected compensation of $100,000 annually), citing Plaintiff's public reputation as "too hot."

   d. A nationally-known law firm dropped interest after internal discussions, despite external referrals from a think tank director. Plaintiff was anticipating compensation beginning at $75/hour for this position.

   e. Connecticut DEEP revoked a conditional teaching offer upon Plaintiff's disclosure of the CNN-linked articles, a position which would have started at $25/hour.

24. Despite applying to more than 35 positions in law, academia, and public policy, Plaintiff has not been invited to a single interview since the September 2023 disclosures. He remains professionally blacklisted and unemployable in his prior fields.

25. Further, Plaintiff was barred from the Academy in September 2023 based on speculative concerns that female cadets felt unsafe, despite the absence of any formal complaint or current affiliation with the Academy. This exclusion prevented him from attending his 40th class reunion and further harmed his professional reputation.

26. Prior to resigning, Nichols College asked Plaintiff to vacate the campus and avoid public appearances. He complied by residing in a local hotel while his family packed and moved. Due to the coverage, Plaintiff was also removed from his Visiting Fellow position at a think tank on national security law at George Mason University Law School.

27. In addition to the professional fall-out listed above, Plaintiff incurred direct out-of-pocket expenses caused by having to quickly relocate his family to various locations due to threats he and his family received as a result of the content of the September 2023 article. This included:

   a. Relocating his entire family on short notice from Massachusetts to Connecticut, resulting in approximately $20,000.00 in costs.

   b. Having to change his children's educational plans mid-school year, causing Plaintiff to incur costs to pay for new schools.

   c. Paying out of pocket for the entire family to attend therapy, due to the very public fallout Plaintiff's family experienced, resulting in harassment of each individual, and causing unresolved trauma. At $150 per session, Plaintiff and his family continue to go through treatment to deal with the fallout of the leak.

28. Finally, Plaintiff has incurred approximately $90,000 in legal fees dealing with representation regarding the September 2023 disclosure and pursuing the CGIS investigation into the Privacy Act violation.

**CAUSE OF ACTION**
**(Privacy Act Violation)**

29. All preceding paragraphs are incorporated by reference as though fully set forth herein.

30. The Privacy Act, 5 U.S.C. § 552a, prohibits: (1) the intentional or willful disclosure of, (2) any record contained in a system of records, (3) by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, (4) the disclosure of which caused the individual to suffer actual damages.

31. It is undisputed that at all relevant times, the Coast Guard maintained records about Plaintiff in a "system of records" as defined under 5 U.S.C. § 552a(a)(5), including but not limited to investigative files, internal prosecution memoranda, and records associated with "Operation Fouled Anchor." These records were retrievable by Plaintiff's name.

32. These records contained Plaintiff's personally identifiable information (PII) and were maintained for internal agency purposes. Many were marked as sensitive, restricted, or "For Official Use Only." They included allegations never investigated or substantiated, personal emails, and internal summaries concerning Plaintiff's service and professional standing. The Coast Guard had an affirmative duty under the Privacy Act to protect these records from unauthorized disclosure, particularly where they implicated sensitive reputational and professional matters.

33. Plaintiff never submitted a written request for, nor did he ever provide prior written consent to, the disclosure of these records to CNN or any other third party outside the Department of Homeland Security. Nor did any routine-use exception under the Privacy Act apply to the public dissemination of these records.

34. Despite the absence of such consent or any lawful exception, the Coast Guard unlawfully disclosed records pertaining to Plaintiff to CNN, either directly or by gross negligence, through a failure to safeguard protected records. Specifically, the Coast Guard maintained a FOIA/Privacy Act SharePoint portal configured in such a way that at least 200 Coast Guard personnel had unrestricted access to unredacted files containing Privacy Act–protected information, including records naming Plaintiff.

35. Forensic investigation confirmed that multiple users accessed Plaintiff's legal files in September, and that at least two users conducted a targeted search using Plaintiff's last name ("Sulmasy") to locate and download legal files pertaining to Plaintiff.

36. The memorandum could not have been accessed by CNN via FOIA; the memorandum itself was marked as non-releasable under various exceptions to FOIA. The only manner in which CNN could have obtained the document was via release by an individual in the Coast Guard with access to the document.

37. The manner and extent of the Coast Guard's dissemination constituted a willful and intentional violation of the Privacy Act. The agency failed to implement basic security safeguards, allowed mass unrestricted access to sensitive files, and permitted downloads of files that could foreseeably lead to public scandal. The scale of the exposure, the nature of the files, and the absence of any timely remedial action, even after the breach was internally reported, demonstrate conduct that is "so patently egregious and unlawful that anyone undertaking the

conduct should have known it unlawful." *See Kelley v. Fed. Bureau of Investigation*, 67 F. Supp. 3d 240, 257 (D.D.C. 2014); *Feldman v. C.I.A.*, 797 F. Supp. 2d 29, 42 (D.D.C. 2011); *York v. McHugh*, 698 F. Supp. 2d 101, 107-08 (D.D.C. 2010) (finding adequate allegation of willfulness where defendant "willfully or intentionally disclosed [plaintiff's] personal medical information by placing it on [a] shared drive").

38. As a direct and proximate result of the Coast Guard's unlawful and willful disclosure of Plaintiff's protected records, Plaintiff has suffered substantial and ongoing actual damages, including but not limited to: (1) a loss of actual and potential income; (2) severe reputational harm; and (3) out of pocket expenses in having to relocate his family several times, seek counseling for the whole family, and employing attorneys to deal with the fall out and seek information pertaining to the breach. In total, this has caused Plaintiff to suffer approximately $10,000,000.00 in actual damages.

39. Thus, as the entity responsible for the Privacy Act violation, the Coast Guard is liable to Plaintiff for these concrete damages.

## **RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court:

**ORDER** the United States Coast Guard to pay Plaintiff actual damages, pursuant to 5 U.S.C. § 552a(g)(4), in an amount to be determined at trial, including but not limited to, the bases listed above;

the United States Coast Guard be assessed with the costs and reasonable attorney's fees incurred in bringing this action, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 or the Privacy Act 5 U.S.C. § 552a; and,

any other relief that the Court deems proper.

Filed: September 19, 2025                Respectfully submitted,

*/s/ Carol A. Thompson*
Carol A. Thompson
DC Bar No. 1658143
THE FEDERAL PRACTICE GROUP
801 17th Street N.W., Suite 250
Washington, D.C.  20006
Telephone:  (202)862-4360
Facsimile:    (888)899-6949
cthompson@fedpractice.com

*Counsel for Plaintiff*