**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**CAPTAIN GLENN SULMASY, USCG (RET.),**

*Plaintiff,*

v.

**MARKWAYNE MULLIN, Secretary of Homeland Security,**

*Defendant.*

Civil Action No. 25-3339 (TSC)

## MEMORANDUM OPINION

Plaintiff Glenn Sulmasy, a former United States Coast Guard Captain, brings a Privacy Act claim against Defendant, Secretary of Homeland Security, seeking compensation for economic harms sustained because of the Coast Guard's allegedly improper disclosure of documents pertaining to him. Compl. ¶¶ 29–39, ECF No. 1. Defendant has filed a Motion to Dismiss or for Summary Judgment in the Alternative. ECF No. 7. For the following reasons, the court will GRANT Defendant's motion.

## I. BACKGROUND

Beginning in the summer of 2023, CNN published a series of exposés about sexual harassment in the Coast Guard Academy. The first article, published in June 2023, described how, for nearly two decades, Academy leaders had covered up female cadets' reports and declined to investigate sexual assaults as criminal matters. *See* Blake Ellis, Melanie Hicken & Audrey Ash, *Criminal Investigation into Coast Guard Academy Revealed Years of Sexual*

*Assault Cover-ups, but Findings Were Kept Secret*, CNN (June 30, 2023, at 10:42 ET).[1] The second article, published in July 2023, implicated Plaintiff in the deficient handling of sexual assault reports. *See* Melanie Hicken et al., *CNN Uncovered a Damning, Secret Investigation into Sexual Assault at the US Coast Guard Academy. This Woman's Case Triggered That Probe*, CNN (July 12, 2023, at 12:07 ET).[2] According to the article, Plaintiff was serving as an attorney at the Academy in the late 1990's when he discouraged a rape victim from pursuing further disciplinary action against her attacker. *See id.* The article also stated that investigators had discovered a statement signed by the woman in boxes labeled with Plaintiff's name, but that Plaintiff had not faced any disciplinary action for his conduct. *See id.*

On September 21, 2023, CNN released a third article revealing Plaintiff's improper sexual conduct with female students. *See* Melanie Hicken et al., *He Was Investigated for Sexting a Student at the Coast Guard Academy. He's Now a College President*, CNN (Sept. 21, 2023, at 16:29 ET) ("September 21 article").[3] The article disclosed that Plaintiff allegedly sent over 1,600 sexually suggestive text messages to a young female student at the Academy. *See id.* He apparently also asked another student for photos of herself in exchange for a letter of recommendation. *See id.* CNN explained that it had obtained this information from a memorandum prepared in 2016 by Coast Guard prosecutors, who had recommended bringing charges against Plaintiff in military court even though Plaintiff had retired from the Academy in 2015. *See id.* No charges were ever brought. *See id.* CNN shared the prosecutorial

[1] https://www.cnn.com/2023/06/30/politics/coast-guard-academy-secret-sexual-assault-investigation-invs/.
[2] https://www.cnn.com/2023/07/12/politics/coast-guard-academy-investigation-invs.
[3] https://www.cnn.com/2023/09/21/us/glenn-sulmasy-coast-guard-investigation-invs.

memorandum with Plaintiff's attorney before it published the article. *See id.* The attorney did not dispute the existence of the text messages, but claimed they were consensual. *See id.* CNN also aired portions of the memorandum on a nightly show. *See id.*

Plaintiff alleges that the September 21 article provoked significant backlash against him. He was then President of Nichols College, which asked him to vacate the premises, *see* Compl. ¶ 26, and launched an investigation into him, *see* Curt Devine, Audrey Ash & Melanie Hicken, *College President Accused of Sexting Former Student at Coast Guard Academy Resigns*, CNN (Oct. 3, 2023, at 19:35 ET).[4] During the investigation, Plaintiff resigned as President of the college. *Id.* He claims that since the publication of the September 21 Article, he has been "professionally blacklisted and unemployable in his prior fields." Compl. ¶ 24. He alleges he has "been terminated from jobs he was recently employed at" and has had offers revoked by "various prestigious law firms" to the tune of hundreds of thousands of dollars. *Id.* ¶ 23.

In February 2024, Plaintiff received notice that he had been a victim of a Privacy Act violation by the Coast Guard. *Id.* ¶ 20. He filed a FOIA lawsuit to obtain more information and received a report prepared by the Coast Guard Investigative Services ("CGIS") assessing a security lapse discovered on September 29, 2023. *Id.* ¶¶ 16, 20. According to the report, the Coast Guard Office of Privacy Management (CG-6P) had misconfigured the privacy settings for FOIA and Privacy Act files on its online shared drive. *Id.* ¶ 16. That misconfiguration had enabled otherwise unauthorized Coast Guard personnel to search for and download legal

[4] https://www.cnn.com/2023/10/03/politics/coast-guard-sulmasy-resign.

documents pertaining to Plaintiff, apparently including investigations into Plaintiff's misconduct while he was at the Academy. *Id.* ¶¶ 17–21.

In September 2025, Plaintiff sued to recover $10 million in damages allegedly sustained because of the "Coast Guard's unlawful and willful disclosure" of his protected records. *Id.* ¶ 38.[5] Defendant then moved to dismiss under Federal Rule 12(b)(6), or in the alternative, for summary judgment under Federal Rule 56. ECF No. 7 ("Def. Mot."). Defendant also attached a copy of the CGIS investigative report (which Plaintiff had not attached to his Complaint), a declaration by Kathleen Claffie, Chief of the Coast Guard's Office of Privacy Management, and a statement of undisputed material facts to the motion. *See* CGIS Report, Ex. 1, ECF No. 7-2; Claffie Decl., ECF No. 7-2; Statement, ECF No. 7-1.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

Federal Rule 12(b)(6) permits defendants to challenge whether a complaint has "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive the motion, a plaintiff must plead facts sufficient to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept all the plaintiff's factual allegations as true and draw all "reasonable inference[s]" in the plaintiff's favor. *Id.* But the court will not credit "inferences [that] are unsupported by the facts." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Kowal*

[5] Because the Coast Guard is housed within the Department of Homeland Security during peacetime, Plaintiff named the Secretary of Homeland Security as Defendant. *See* 6 U.S.C. § 468(b), (g). Although the Secretary was later replaced, the current office bearer has automatically been substituted in place as Defendant. *See* Fed. R. Civ. P. 25(d).

*v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir.1994)). Nor will it entertain naked legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In ruling on a Rule 12(b)(6) motion, the court is not confined to the four corners of the complaint but may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (quoting 5B *Wright & Miller's Federal Practice & Procedure* § 1357 (3d ed. 2004 & Supp. 2007)); *see N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020). Those include both formal and informal agency-related documents that are "central to [the] plaintiff's claim." *See Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999). In particular, courts may consider "documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Pearson v. District of Columbia*, 644 F. Supp. 2d 23, 29 (D.D.C. 2009) (quoting *Hinton v. Corrs. Corp. of Am.*, 624 F.Supp.2d 45, 45–46 (D.D.C. 2009)).

**B. Rule 12(d) Conversion into Motion for Summary Judgment**

When "matters outside the pleadings are presented to" the court on a Rule 12(b)(6) motion "and [are] not excluded by the court," Federal Rule 12(d) provides that the "motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In that event, the court must "give the parties notice of the court's intention to convert the motion and a reasonable opportunity to discover and present relevant evidence." *Hurd v. D.C., Gov't*, 864 F.3d 671, 687 (D.C. Cir. 2017) (citing Fed. R. Civ. P. 12(d) (requiring the court to give all parties "a reasonable opportunity to present all the material that is pertinent to the motion")).

Providing the nonmovant an "opportunity to discover" evidence to "rebut any facts or negative inferences the district court might draw from the [movant's] exhibits or to provide facts and context in his own support" protects that party's procedural rights. *Id.* A district court has discretion to disregard "affidavits or other factual matter outside the pleadings," but if it chooses "to consider extra-pleading material," it must apply the standards governing Rule 56. *Id.*

**C. Rule 56 Motion for Summary Judgment**

Under Federal Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). In claiming that a fact is—or is not—disputed, a party must support the assertion by citing to particular materials in the record. *See* Fed. R. Civ. P. 56(c)(1)(A). In particular, a nonmovant cannot defeat a motion for summary judgment merely by proffering allegations or denials unsupported by record evidence. *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). That being said, the evidence presented by the nonmovant is "to be believed, and all justifiable inferences are to be drawn" in the nonmovant's favor. *Liberty Lobby*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

**D. Privacy Act**

Enacted in 1974, the Privacy Act "protect[s] the privacy of individuals identified in federal information systems." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42 63 (2024) (alteration omitted) (citing Privacy Act of 1974, Pub. L. No. 93–579, § 2(a)(5), 88 Stat. 1896 (codified at 5 U.S.C. § 552a note)). Among other things, the Act prohibits covered

agencies from disclosing "any record which is contained in a system of records . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). A catch-all provision also authorizes an individual to sue if an agency's failure to adhere to its obligations "ha[s] an adverse effect" on him. *Id.* § 552a(g)(1)(D). Individuals may recover actual damages, but only if they have shown that "the agency acted in a manner which was intentional or willful." *Id.* §§ 552a(g)(4), (g)(4)(A); *see Reuber v. United States*, 829 F.2d 133, 141 & n.58 (D.C. Cir. 1987). A claim must be brought "within two years from the date on which the cause of action arises," except in circumstances inapplicable to this case. *Id.* § 552a(g)(5).

## III. ANALYSIS

### A. The CGIS Investigative Report and Claffie Declaration

The parties first dispute whether the court may permissibly consider the CGIS Investigative Report and the Claffie declaration in resolving Defendant's motion. *See* Opp'n at 14–18, ECF No. 16; Reply at 2, ECF No. 19. The Complaint references the CGIS report multiple times. Indeed, its most central allegations arise from the report, including that the Coast Guard misconfigured the privacy settings of restricted documents, thereby enabling multiple individuals to improperly access and download legal documents pertaining to Plaintiff. Compl. ¶¶ 16-20. Moreover, Plaintiff has not disputed the authenticity of the report. "[W]here a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion into one for summary judgment." *Wilson v. Nextel Commc'ns*, 296 F. Supp. 3d 56, 58 n.2 (D.D.C. 2017) (quoting *Vanover*, 77 F. Supp. 2d at 98). "Otherwise, a plaintiff with a legally deficient claim

could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Strumsky v. Wash. Post Co.*, 842 F. Supp. 2d 215, 218 (D.D.C. 2012) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)).

The Claffie declaration is a different story, however. Claffie's sworn statements plainly constitute "extra-pleading material" that Plaintiff neither referenced nor relied on in his Complaint. *Hurd*, 864 F.3d at 687. Accordingly, the court could only consider the declaration were it to convert Defendant's Rule 12(b)(6) motion into a Rule 56 motion for summary judgment pursuant to Federal Rule 12(d). But there is no reason to take that procedural leap—and grapple with its ramifications—at this preliminary stage of the litigation. Conversion would require providing Plaintiff with appropriate notice and a "reasonable opportunity to discover and present relevant evidence." *Id.* But discovery is resource and time intensive. The interests in efficiency and economy therefore counsel against conversion.

Defendant contends that he has moved for summary judgment under Rule 56 in the alternative and has presented a statement of undisputed facts as required by Local Rule 7(h). Reply at 3. He argues that "there is no prohibition on filing a pre-discovery motion for summary judgment." *Id.* But even so, summary judgment is generally inappropriate where "the parties have not yet engaged in discovery." *Coleman v. Allstate Ins. Co.*, 80 F. Supp. 3d 5, 8 (D.D.C. 2015). The D.C. Circuit has repeatedly cautioned that "summary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (citing *Liberty Lobby*, 477 U.S. at 257); *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) ("As we have stated before, summary judgment ordinarily 'is proper only after the plaintiff has been given adequate time for

discovery.'" (citing *First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988))); *see also Celotex*, 477 U.S. at 322 (summary judgment appropriate only "after adequate time for discovery"). Plaintiff has not yet had a chance to obtain evidence relevant to his claim, and the court declines to consider Defendant's motion for summary judgment at this early stage.

**B. Privacy Act Claim**

The court nonetheless grants Defendant's Rule 12(b)(6) motion because Plaintiff has failed to state a claim for relief under the Privacy Act. He cannot plausibly show that the agency's violation of its obligations under the Privacy Act caused his economic losses. Under section 552a(g)(1)(D), a plaintiff must establish that an agency failed to comply with its Privacy Act obligations "in such a way as to have an adverse effect on an individual." 5 U.S.C. § 552a(g)(1)(D). The plain text of the statute thus requires the injures to have been "caused by" the agency's actions or omissions. *Albright v. United States*, 732 F.2d 181, 187 (D.C. Cir. 1984). In other words, the "adverse effect[s]" a plaintiff suffers must have "result[ed]" from the agency's failures. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1124 (D.C. Cir. 2007) (citations omitted); *see also Doe v. Chao*, 540 U.S. 614, 619 (2004) (characterizing section 552a(g)(1)(D) as permitting recovery for "breaches of the statute with adverse consequences").

Plaintiff claims that his economic harms were caused by the Coast Guard's misconfiguration of privacy settings on files protected by FOIA and the Privacy Act, which enabled unidentified individuals to obtain the prosecutorial memorandum central to CNN's September 21 article and leak it to the media company. *See* Opp'n at 4–5. But the CGIS Investigative Report the Complaint references forecloses this theory. The report reveals that the misconfiguration of privacy settings occurred on September 22, a day *after* the September 21

article was published. *See* CGIS Report at 6, 28–29. The report also establishes that any individuals who downloaded legal documents pertaining to Plaintiff did so between September 22 and September 29. *See id.* at 22, 28–29. CNN could not have obtained the prosecutorial memorandum at the heart of its September 21 article because of a security lapse that occurred after the article's publication. Indeed, it is unclear if the prosecutorial memorandum was even downloaded from the Coast Guard's servers between September 22 and September 29. CNN stated that the prosecutorial memorandum it obtained was dated February 2016, *see* September 2021 Article, whereas the CGIS report reveals that the only document pertaining to Plaintiff that was downloaded was dated January 2016, *see* CGIS Report at 22.

Plaintiff insists that the Coast Guard's "unlawful disclosure plausibly produced" his economic harms because the "national dissemination of confidential prosecutorial analysis" by CNN "materially influenced subsequent institutional decisions" by Nichols College and other employers. Opp'n at 27. But Plaintiff gets the causation analysis backwards. The potential Privacy Act violation alleged in the Complaint occurred after the publication of the September 21 Article. And Plaintiff has not suggested that another Privacy Act violation plausibly occurred prior to the publication of the article. Because Plaintiff has failed to establish any "causal[] link" between the Coast Guard's actions and his economic harm, his Complaint does not state a claim for relief. *Albright*, 732 F.2d at 186. The court accordingly declines to reach the parties' arguments about the other elements of a cause of action under the Privacy Act.

## IV. CONCLUSION

For the foregoing reasons, the court will GRANT Defendant's Motion to Dismiss. ECF No. 7. A separate Order accompanies this Memorandum Opinion.

Date: September 18, 2026

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge